USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 05/23/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN MICILLO,

Plaintiff,

-v-

LIDDLE & ROBINSON LLP, et al.,

Defendants.

15-CV-6141 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

In this case, Plaintiff John Micillo pursues legal malpractice claims against his former attorneys, contending that they mishandled a whistleblower claim that he had sought to bring against his former employer, the New York City Department of Education ("DOE"), relating to allegations of fraud that he had made against other employees of the DOE in November 2012. In December 2015, Plaintiff issued a subpoena to the Office of the Special Commissioner of Investigations for the New York City School District ("SCI"), a non-party, seeking documents relating to SCI's investigations into Plaintiff's original allegations. To date, SCI has refused to produce any responsive documents on the ground that they are protected by the law enforcement privilege. Plaintiff now moves to compel production, arguing that SCI waived any claim of privilege and, alternatively, that SCI has failed to establish that the documents are privileged. Because the Court agrees with Plaintiff on both fronts, his motion to compel is GRANTED.[1]

[1] On April 4, 2016, Defendant Liddle and Robinson LLP served a subpoena on SCI with demands identical to Plaintiff's subpoena. (*See* Mem. Office of Special Comm. Investigation Resp. Pl. John Micillo's Mot. To Compel (Docket No. 36) ("SCI Opp'n") 1 n.1; *id.*, Ex. 1, Decl. Gerald P. Conroy, Ex. E). In a telephone conference a few days earlier, the parties agreed that the Court's ruling on this motion would apply to that subpoena too. (*See id.* at 1 n.1).

## BACKGROUND

As noted, this case arises out of a whistleblower claim that Plaintiff sought to bring against the DOE. In November 2012, while serving as the Athletic Director of the High School for Medical Professionals, Plaintiff reported evidence of what he believed to be timecard and time sheet fraud committed by the High School's football coaches. (*See* Compl. (Docket No. 1) ¶ 27(d)). Later that month, Plaintiff was informed that his employment with the DOE would be terminated. (*Id.* ¶ 27(f)).[2] Shortly thereafter, Plaintiff contacted SCI — an independent body charged with investigating misconduct within the DOE — to report that he had been subjected to retaliation for his having reported the alleged fraud. (*See* Mem. Pl. John Micillo Supp. Mot. To Compel (Docket No. 32) ("Pl.'s Mem.") 2-3). After conducting some sort of investigation, SCI denied Plaintiff whistleblower protection. (*See* Mem. Office Special Comm. Investigation Resp. Pl. John Micillo's Mot. To Compel (Docket No. 36) ("SCI Opp'n") 3). Plaintiff then retained Defendants in this case — two law firms and a lawyer at one of the firms — to bring a claim against the DOE for violation of the New York State Civil Service Law. (*See* Compl. ¶ 28). That claim was eventually dismissed for failure to file a timely notice of claim. (*See id.* ¶¶ 32-35). In this suit, Plaintiff argues that Defendants' failure to submit a notice of claim amounted to legal malpractice. (*Id.* ¶¶ 37-41).

---

Separately, the Court was advised after this motion was fully briefed that Plaintiff has reached a settlement in principle with Defendant Berger Attorney P.C. (*See* Docket No. 41). That development has no bearing on the present motion.

[2] Although immaterial for the purposes of this motion, there is some inconsistency between Plaintiff's Complaint and his briefing with respect how the DOE allegedly retaliated against him. The Complaint alleges that, on November 26, 2012, Plaintiff was informed "that his employment would be terminated." (Compl. ¶ 27(f)). By contrast, his brief states that, on November 27, 2012, he was informed "that he was not chosen for the Assistant Principal position" for which he had applied. (Mem. Pl. John Micillo Supp. Mot. To Compel (Docket No. 32) ("Pl.'s Mem.") 2).

On October 29, 2015, this Court entered a Civil Case Management Plan and Scheduling Order that, *inter alia*, set a deadline for the completion of discovery. (Docket No. 14). On December 16, 2015, Plaintiff served SCI with a subpoena seeking documents related to the investigation that was conducted after Plaintiff claimed whistleblower protection. (*See* Pl.'s Mem. 3; Decl. Andrew M. Moskowitz (Docket No. 30) ("Moskowitz Decl."), Ex. A). Seven days later, SCI served objections to Plaintiff's requests. To the extent relevant here, SCI identified two responsive files: one pertaining to an investigation concerning "allegations of criminal and other misconduct by DOE employees" that were "not substantiated" and another "involv[ing] some of the same facts, but focused on Plaintiff's claim of retaliation," which "was also determined to be unfounded." (Moskowitz Decl., Ex. B, ¶ 4). SCI, however, refused to produce any documents from the files, citing the law enforcement privilege. (*See id.*). That was SCI's final word on the subject until March 2016, when Plaintiff wrote to request that SCI produce a privilege log or other description of the withheld materials as required by the Federal Rules of Civil Procedure and this Court's Local Rules. (*Id.*, Ex. C). On March 17, 2016, more than three months after SCI served its objections, SCI sent Plaintiff a letter identifying the two withheld files with greater particularity and describing the contents of each. (*Id.*, Ex. D).

Fact discovery was originally due to close on March 25, 2016, but that deadline was later adjourned to April 8, 2016. (Docket No. 20). On March 30, 2016, Plaintiff filed a letter motion asking the Court to hold a conference to resolve objections to his subpoena of SCI. (Docket No. 23). After holding a telephone conference on April 1, 2016, the Court directed Plaintiff to submit a formal motion to compel. (Docket No. 25). Notably, although SCI had originally identified two files as responsive — a 2014 criminal investigation (Case No. 2014-0505) and the 2012 whistleblower investigation (Case No. 2012-5949) — SCI realized before filing its

opposition that the 2014 investigation file was not, in fact, responsive to Plaintiff's subpoena. (SCI Opp'n 1). Additionally, SCI identified a new file (Case No. 2012-6092) that is responsive. (*Id.*). SCI argues that both files are protected by the law enforcement privilege.

**DISCUSSION**

Plaintiff argues that SCI should be ordered to produce the responsive files for either of two reasons. First, Plaintiff contends that SCI waived any privilege it might have by failing to submit an adequate privilege log within a reasonable time of making its objections. Second, Plaintiff avers that SCI has failed to establish that the responsive files are protected by the law enforcement privilege and that his need for the files overcomes any privilege regardless. The Court addresses those arguments in turn.

**A. Waiver**

Under Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, a party subpoenaed to produce materials must serve any objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Under Rule 45(e)(2)(A)(ii), a party withholding subpoenaed information on the ground that it is privileged must "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." On its face, Rule 45(d)(2)(B) does not indicate whether privilege objections must be made within the prescribed fourteen days, and Rule 45(e)(2)(A)(ii) does not set a deadline for disclosure of the nature of materials withheld on privilege grounds. The Second Circuit has held, however, that a party asserting a privilege in response to a subpoena must "at least assert any privileges within the 14 days provided in Rule 45(d)(2)(B)," and must provide a full privilege log, detailing the "nature of the withheld documents" as required by Rule 45(e)(2)(A)(ii), "'within a reasonable time'" thereafter. *In re*

*DG Acquisition Corp*., 151 F.3d 75, 81 (2d Cir. 1998) (quoting *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996)). Those requirements help to "ensure that the information required under the Rule is provided to the requesting party within a *reasonable time*, such that the claiming party has adequate opportunity to evaluate fully the subpoenaed documents and the requesting party has ample opportunity to contest [any] claim [of privilege]." *Tuite*, 98 F.3d at 1416; *see also* Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendment (stating that the purpose of what is now Rule 45(e)(2)(A)(ii) "is to provide a party whose discovery is constrained by a claim of privilege . . . with information sufficient to evaluate such a claim and to resist if it seems unjustified").

In this case, SCI served its objections within fourteen days of Plaintiff's subpoena, but it waited until March 17, 2016 — over three months later — to provide anything approximating a privilege log, as required by Rule 45(e)(2) and Local Rule 26.2. SCI halfheartedly argues that its initial objections satisfied the requirements of Rule 45(e)(2) (*see* SCI Opp'n 8), but that argument is meritless. SCI's objections provided almost no information about the contents of the relevant files or why they might be privileged. (*See* Moskowitz Decl., Ex. B). Among other things, the objections did not identify or describe any of the documents within the two allegedly responsive files, let alone do so with enough particularity to "enable" Plaintiff "to assess the claim" of privilege. Fed. R. Civ. P. 45(e)(2); *see* Local Rule 26.2 (providing that a party withholding a document on privilege grounds "shall" describe, among other things, "the type of document, e.g., letter or memorandum"; "the general subject matter of the document"; the date of the document"; and "the author of the document, the addressees of the document, and any other recipients"); *see also, e.g.*, *United States v. Constr. Prods. Research Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996) (concluding that privilege logs "simply [did] not provide enough information to

support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation"); *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014) (holding that privilege logs were inadequate because they provided insufficient information). Moreover, SCI did not even identify one of the two files now at issue, Case No. 2012-6092, in its initial objections. Indeed, it did not identify that file until its opposition to the present motion, and it has never provided a privilege log as to that file at all.

Alternatively, SCI tries to avoid a finding of waiver by blaming Plaintiff for not alerting it to its obligations until March 2016, when Plaintiff demanded that SCI provide a privilege log. (*See* SCI Opp'n 7-8). But contrary to SCI's suggestions, Plaintiff is not SCI's keeper, and SCI's obligation to produce a privilege log was triggered by service of the subpoena, not by Plaintiff's reminder.[3] That is, SCI had its own obligation, under Rule 45(e)(2) and Second Circuit precedent, to serve a privilege log within a "reasonable time." *DG Acquisition Corp*., 151 F.3d at 81. And by waiting over three months to serve anything approximating a privilege log, and failing to proffer any explanation or excuse for that delay, SCI plainly fell short of fulfilling that obligation. *See Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 48 (D. Conn. 2007) (collecting cases and concluding that — although a delay "of a few days is normally excusable" — a delay of four months "is unreasonable"). Notably, the facts of this case starkly

---

[3] That is not to say, of course, that Plaintiff is beyond reproach. Plaintiff could have and should have been more diligent in following up with SCI about its objections and in seeking relief from the Court. Given the lack of such diligence, the Court would have been on firm ground in adhering to the original deadline for fact discovery. *See, e.g.*, Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. YEAR) (holding that, when considering a motion to modify a scheduling order under Rule 16(b), "a finding of 'good cause' depends on the diligence of the moving party"). But that has no bearing on the question of whether SCI waived its claim of privilege. SCI, as the party withholding subpoenaed information under a claim of privilege, is ultimately responsible for the delay in serving a privilege log irrespective of Plaintiff's behavior. *See* Fed. R. Civ. P. 45(e)(2); Local Rule 26.2.

illustrate the importance of enforcing the "reasonable time" deadline for production of a privilege log. SCI did not produce a privilege log until days before fact discovery was originally set to close, so the parties were unable to complete fact discovery by that deadline and will likely need even more time as a result of this Opinion and Order. (*See* Apr. 8, 2016 Letter Mot. (Docket No. 28) (seeking an extension of the fact discovery deadline and noting that "[i]f Plaintiff's motion to compel production form SCI is granted, in whole or in part, additional fact discovery will be required")).

In short, the Court concludes that SCI failed to provide Plaintiff with a privilege log in a timely (and, at least as to the file that SCI disclosed for the first time in its brief, a proper) manner. Accordingly, SCI has waived any privilege with respect to the two responsive files. *See, e.g.*, *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992); *Yorkville Advisors*, 300 F.R.D. at 167-68 & n.7 (collecting cases and noting that imposing waiver, rather than some lesser penalty, is the appropriate remedy when a party has failed to provide timely privilege logs); Wright & Miller, Federal Practice and Procedure § 2464 (3d ed.) ("Courts consistently have held that [a party receiving a discovery request who asserts a privilege] is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim." (footnote omitted)); *see also Grossman v. Schwarz*, 125 F.R.D. 376, 386-87 (S.D.N.Y. 1989) (holding that failure to comply with privilege rules "will be considered presumptive evidence that the claim of privilege is without factual or legal foundation").

**B. Merits**

In the alternative, the Court concludes that SCI has not established that the files are even subject to the law enforcement privilege. As the Second Circuit held in *In re The City of New*

*York*, 607 F.3d 923 (2d Cir. 2010), "the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." *Id.* at 944; *see also In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (noting that placing the initial burden on the entity asserting the law enforcement privilege "ensure[s] that the privilege is presented in a deliberate, considered, and reasonably specific manner"). To meet that burden, the invoking party "must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . . interfere[] with an investigation.'" *City of New York*, 607 F.3d at 944 (quoting *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)). Applying those standards here, and mindful of the principle that privileges "must be construed narrowly because they impede the search for the truth," *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144-45 (2003), the Court concludes that SCI falls woefully short of establishing that the privilege applies.

Specifically, SCI fails to establish that any of the documents at issue contains information that the privilege is intended to protect. "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship" and that that burden is "not discharged by mere conclusory or *ipse dixit* assertions." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) (internal quotation marks and citations omitted); *see also Constr. Prods.*, 73 F.3d at 474-75 (holding that a privilege had not been established in part due to "the glaring absence of any supporting affidavits or other documentation"). SCI, however, offers only conclusory or *ipse dixit* assertions.

According to SCI's objections, Case No. 2012-5949 involved a complaint filed by Plaintiff claiming that he had been "subjected to retaliation by his DOE employers" and seeking whistleblower protection. (Moskowitz Decl., Ex. B, at 2). SCI eventually concluded that there had been no retaliation and communicated that finding to Plaintiff by letter. (*Id.*). As for how or why that non-criminal investigation might be protected by the law enforcement privilege, SCI merely asserts, with no explanation or elaboration, that it "concerned some of the allegations" made in a criminal investigation that was conducted two years later. (*Id.*). In its March 17, 2016 letter, SCI described an even more tenuous connection between the two investigations, stating that Case No. 2012-5949 simply "involved some of the same facts" as the 2014 criminal investigation. (Moskowitz Decl., Ex. D, at 2). Notably, SCI's case for protecting the file for Case No. 2012-6092 is even thinner. SCI describes that file for the first time in its opposition, stating only that it involved the investigation of "a complaint of misconduct which was reported by Plaintiff with his whistleblower claim, but now was reported by other DOE employees." (SCI Opp'n 3). Put simply, the mere fact that an investigation concerns allegations of misconduct or "involve[s] some of the same facts" as a later criminal investigation does not come close to demonstrating that documents relating to the investigation are protected by the law enforcement privilege.

Far from helping its case, SCI's purported privilege log seems only to confirm that Case No. 2012-5949 does not contain information that would be protected by the law enforcement privilege. SCI describes the file as involving a case of "[w]histleblower protection not granted." (Moskowitz Decl., Ex. D, at 3). As for the itemized list of what is in the file, a large number of the documents appear to be items that are plainly not privileged — including, for example, e-mails and letters sent to or from Plaintiff himself. (*See id.* at 3-4). Other documents on the list

— such as an "investigator's final report" concluding that Plaintiff's complaint did "not meet the statutory requirements for Whistleblower protection" (*see id.* at 3) — appear to have no connection to a criminal investigation. SCI's proffer with respect to Case No. 2012-5949, inadequate as it was, is far better than its proffer with respect to Case No. 2012-6092, of course, for the simple reason that SCI never even produced a privilege log for the latter case file. In short, nothing on SCI's log suggests that any document in the two files contains the kind of information that the law enforcement privilege is intended to protect.

SCI's failure to substantiate (or even really explain) its assertion that the responsive files fall within the scope of the privilege is compounded by the fact that SCI has made a broad, undifferentiated assertion of privilege: Rather than identify particular documents and information that are supposedly privileged, SCI asserts that the responsive files are privileged in their entirety. By contrast, where courts have upheld law enforcement privilege claims, they have done so in part because the responding parties have been economical in their invocations. For example, in *Black v. Sheraton Corp. of Am.*, 564 F.2d 531 (D.C. Cir. 1977), a case relied on by SCI (*see* SCI Opp'n 11), the D.C. Circuit addressed whether to compel disclosure of certain documents related to an FBI eavesdropping operation. Significantly, however, the Government never argued that all documents associated with the FBI operation were protected by the privilege: The FBI "made available to the plaintiff (1) all logs of the surveillance; (2) all [summaries] based on the logs and sent by the Washington Office to other locations; (3) . . . two memoranda from the director of the FBI advising the Attorney General of the information which had been obtained from the surveillance; and (4) . . . portions of . . . two FBI reports to the Criminal Division which contained information directly obtained from the surveillance." *Id.* at 535. The Government also eventually "authorized the production, depending upon approval by

(the district) court, of all material in the FBI file on plaintiff which was obtained indirectly as the result of any leads from the eavesdropping," subject to the condition that "none of the material involved would or would tend to identify any confidential informants of the FBI." *Id.* at 537 (internal quotation marks omitted). The D.C. Circuit described the fact that the Government made only targeted claims of privilege — rather than a blanket assertion of "privilege with respect to all of the documents in the file" — as "critical." *Id.* at 536-37; *see also, e.g.*, *City of New York*, 607 F.3d at 946 (noting that the City had already disclosed 600 pages of responsive reports); *Borchers v. Commercial Union Assurance Co.*, 874 F. Supp. 78, 79 (S.D.N.Y. 1995) (noting that the subpoenaed party "produced some of the documentation requested by plaintiffs, including most of the investigative file created prior to mid-March 1992"). Thus, SCI's refusal to produce *any* documents from the two responsive files only exacerbates the deficiency of its privilege claim.

SCI alternatively asserts that the responsive files should be deemed privileged because they "contain confidential personal information, including witnesses' names, Social Security numbers, and home addresses." (Moskowitz Decl., Ex. B, at 3; *see also* SCI Opp'n 6 (stating that disclosing the requested files, especially "witnesses' identities and statements, would constitute an unwarranted invasion of privacy"). But the proper remedy for sensitive personal information is either redaction or a protective order, not withholding from discovery altogether. (*See* Stipulated Confidentiality Agreement & Protective Order (Docket No. 39) (providing processes for designating discovery material "confidential" and for protecting confidential materials from public disclosure)). As for witnesses' names, SCI has not established (or even explained why) the names of witnesses — all of whom are apparently current or former DOE employees already known to Plaintiff (*see* Pl.'s Mem. 8; SCI Opp'n 13) — might be

confidential. *Cf. Borchers*, 874 F. Supp. at 80 (noting that the party claiming the law enforcement privilege put forward evidence demonstrating that it "ordinarily promises informants that the informant's identify will not be disclosed and statements made . . . will not be made public"). Finally, SCI contends that the responsive files are privileged because disclosure of the information contained in the files would impair SCI's ability to conduct future investigations, as it might "have a chilling effect on cooperation with SCI by complainants and witnesses." (Moskowitz Decl., Ex. D, at 3; *see also* SCI Opp'n 10-11). But, in the circumstances here, that is little more than an *ipse dixit* assertion, which is not enough to justify invocation of the law enforcement privilege.

It is true that some courts have declared information privileged because its disclosure could impair the ability of law enforcement agencies to conduct future investigations. *See, e.g.*, *City of New York*, 607 F.3d at 944-45; *Black*, 564 F.2d at 545-46; *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95-97 (S.D.N.Y. 2000); *Borchers*, 874 F. Supp. at 80. But each of those cases involved factors that are absent here. This is not a case, for example, where an investigating body promised its witnesses that their testimony would be kept confidential or a case involving an ongoing investigation of a violent crime where disclosure might put the investigation or the witnesses themselves at risk. *See Borchers*, 874 F. Supp. at 80; *see also Nat'l Congress*, 194 F.R.D. at 95-97 (agreeing that the law enforcement privilege "has some applicability" where defendants had submitted declarations attesting that the "ability to represent that information provided will be kept strictly confidential is an indispensable component in certain investigations," but still ordering that the relevant "records be disclosed in redacted form"). Nor is it a case involving undercover or confidential informants whose identity might be compromised, *see City of New York*, 607 F.3d at 944-45, or one

involving confidential law enforcement surveillance techniques or procedures, *see Black*, 564 F.2d at 545-46. Instead, all that SCI has established is that the documents at issue concern investigations conducted by a quasi-law enforcement body. If the Court were to hold that that — and a conclusory assertion that disclosure could "chill" future investigations — were enough, it would be an unprecedented (and, in the Court's view, an unwarranted) expansion of the privilege.[4]

**C. *In Camera* Review**

One final issue remains. Perhaps seeking to avoid having to actually "show that the [withheld files] contain information that the law enforcement privilege is intended to protect," *City of New York*, 607 F.3d at 944, SCI invites the Court to do the heavy lifting by conducting an *in camera* review of the two responsive files before ordering their disclosure. (SCI Opp'n 1). "*In camera* review," however, "is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." *Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). Exercising that discretion here, the Court declines SCI's invitation. As other courts have held, given the burdens associated with *in camera* review, a court should not indulge a party's invitation to conduct one unless that party has made some minimal showing that review is likely to support its position. *See, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266 (D. Md. 2008) ("It

---

4 The law enforcement privilege is "qualified, not absolute," and can be overcome by "the need of a particular litigant for access to the privileged information." *City of New York*, 607 F.3d at 945 (internal quotation marks omitted). In light of the Court's conclusion that SCI has not carried its burden of showing that the privilege applies in the first instance, the Court need not — and does not — reach Plaintiff's argument that he has shown sufficient need to overcome the privilege. *See id.* (noting that a court should determine whether a party seeking disclosure can overcome the privilege only once it "has determined that the law enforcement privilege applies"); *In re Sealed Case*, 856 F.2d at 271 (same).

should go without saying that the court should never be required to undertake *in camera* review unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention."); *U.S. ex rel. Burns v. Family Practice Assocs. of San Diego*, 162 F.R.D. 624, 627 (S.D. Cal. 1995) ("Prior to an *in camera* review there must first be a sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection. *In camera* review should not replace effective adversarial testing of the claimed privileges and protection."); *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988) ("After giving defendants an opportunity to respond (with a brief and possible supplemental affidavits or declarations), the court can determine whether the defendants have made the requisite threshold showing to invoke the privilege. If the court finds the defendant has not satisfied its threshold burdens, direct disclosure is in order."); *cf. United States v. Zolin*, 491 U.S. 554, 572 (1989) ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." (citation and internal quotation marks omitted)). In this case, SCI fails to make even that minimal showing — particularly since no *in camera* review could cure SCI's waiver of the privilege.

In his reply brief, Plaintiff also asks the Court to conduct an *in camera* review — not with respect to the two responsive files as to which SCI invoked the privilege, but with respect to the file concerning the 2014 criminal investigation that SCI now asserts is non-responsive. (Reply

Mem. Pl. John Micillo Further Supp. Mot. To Compel (Docket No. 37) 7). Specifically, Plaintiff complains that SCI provides "no explanation" as to how it arrived at that conclusion, and contends that the Court, not SCI, should be the "final arbiter on this issue." (*Id.*). In the normal course, however, the responding party — not the Court — determines in the first instance whether a document is responsive to a discovery request. Plaintiff points to no authority to suggest that any different rule is appropriate where, as here, a party initially, but mistakenly, believes that certain documents are responsive, and later determines they are not. *See Makhoul v. Watt*, No. 11-CV-5108 (PKC) (VMS), 2014 WL 977682, at *5 n.7 (E.D.N.Y. Mar. 12, 2014) (concluding "on the basis of Defendants' representation that they reviewed the documents and, in particular, Defendants' good faith correction" to its earlier list of responsive documents, that certain documents identified by the defendant as non-responsive did not need to be submitted for *in camera* review). Nor does Plaintiff provide any basis to believe that SCI's statement that it has now concluded that "the 2014 investigation described in SCI's objections and subsequent letter is not what Plaintiff demanded or is seeking" is suspect or made in bad faith. (SCI Opp'n 1). Just as SCI is not automatically entitled to *in camera* review of documents it claims to be privileged, Plaintiff may not simply demand *in camera* review of documents it believes might be responsive to its request.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel disclosure of the two responsive files (Case Nos. 2012-5949 and 2012-6092) is hereby GRANTED. SCI is ordered to disclose those files **within two weeks** of the date of this Opinion and Order. SCI shall promptly confer with the parties with respect to any proposed redactions to the documents or the need for a protective order; any disputes may be raised with the Court by letter motion. By the same date,

the parties shall confer and submit a joint letter proposing new deadlines for the completion of discovery, mindful that the Court is not likely to grant too much more time given that the issue resolved in this Opinion and Order was raised only days before discovery was due to close.

The Clerk of Court is directed to terminate Docket No. 31.

SO ORDERED.

Date: May 23, 2016
New York, New York

JESSE M. FURMAN
United States District Judge